IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD PIKE,

       Plaintiff,

v.                                                 No. 10-CV-1222

PAYMENT RECOVERY SERVICES, INC.,

       Defendant.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1.     Defendant Payment Recovery Services, Inc., an unlicensed collection agency, repeatedly threatened to file a lawsuit against Plaintiff Richard Pike, without any intent to do so, including leaving a voicemail message in which it failed to identify itself or state that it was a debt collector.  Mr. Pike seeks damages under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and New Mexico consumer protection law.

### Jurisdiction

2.     This Court has jurisdiction under the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331 & 1337.  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

### Parties

3.     Plaintiff Richard Pike resides in Albuquerque, New Mexico.

4.     Defendant Payment Recovery Services, Inc. ("PRS") is a Georgia corporation and debt collection agency whose principal business is the collection of consumer debts.  It regularly collects or attempts to collect debts originally owed or due or asserted to be

owed or due another.  It is not licensed as a collection agency by the New Mexico

Financial Institutions Division ("FID").  PRS is "debt collector" as defined by the

FDCPA, 15 U.S.C. § 1692a(6).

**Facts**

5.  PRS either purchased the debt account that it tried to collect from Mr Pike after the

account was in default or it obtained the right to collect on this account.

6.  This account was obtained for personal, family or household purposes.

7.  On November 1, 2010, PRS left a voicemail message on Mr. Pike's home telephone in

which it failed to identify itself or state that it was a debt collector.

8.  In this November 1 voicemail message, the caller identified herself only as "Systine."

She stated that it was "very important you contact me back immediately."  She stated that

the message was "pertaining to a legal matter attached to your name, social – ending in

zero nine seven zero – and state issued ID."  She instructed Mr. Pike to "refer to case

number 103105" when he called back.   She warned Mr. Pike that "[f]ailure to comply

will result in further proceedings."  She asked Mr. Pike to call back to (404) 941-3400.

9.  The person who identified herself as "Systine" in the November 1 voicemail message is

an employee of PRS or was at the time.

10.  The telephone number (404) 941-3400 belongs to PRS.

11.  On November 8, 2010, PRS left a second voicemail message on Mr. Pike's home

telephone.  In this November 8 voicemail message, the caller identified herself as "Doris

Hilton from PR Services."  She stated that she was calling about "an urgent legal matter .

. . that needs your immediate attention."  She referred to the same case number – "case

number 103105" – as had been referred to in the November 1 voicemail message.   She

2

warned Mr. Pike that "[f]ailure to comply may result in further proceedings." She asked Mr. Pike to call back to (877) 421-7145..

12.     The telephone number (877) 421-7145 belongs to PRS.

13.     On November 16, 2010, PRS left a third voicemail message on Mr. Pike's home telephone. In this November 16 voicemail message, the caller identified herself as "Doris Hilton calling from PR Services Processing Division." She stated that she was calling about "a very important legal matter that is connected with your name and social." She referred to the same case number – "case number 103105" – as had been referred to in the two prior voicemail messages. She warned Mr. Pike that "[f]ailure to comply will result in further proceedings taking place." She asked Mr. Pike to call back to (877) 421-7145.

14.     On November 24, 2010, PRS left a fourth voicemail message on Mr. Pike's home telephone. In this November 24 voicemail message, the caller identified herself as "Ms. Hilton calling from PR Services Processing Division." She referred to the same case number – "case number 103105" – as had been referred to in the three prior voicemail messages. She asked Mr. Pike to call back to (877) 421-7145.

15.     On November 27, 2010, PRS left a fifth voicemail message on Mr. Pike's home telephone. In this November 27 voicemail message, the caller identified herself as "Ms. Hilton calling from PR Services Processing." She stated that she was calling about "a case here that has your name and social security number attached." She stated that "it is in your best interest that you contact me as soon as possible." She referred to the same case number – "case number 103105" – as had been referred to in the four prior voicemail messages. She warned Mr. Pike that "[f]ailure to comply with this request

may cause further procedures to be taken place." She asked Mr. Pike to call back to (877) 421-7145.

16.     The person who identified herself as "Doris Hilton" or "Ms. Hilton" in the November 8, November 16, November 24 and November 27 voicemail messages is an employee of PRS or was at the time.

17.     On December 20, 2010, PRS left a sixth voicemail message on Mr. Pike's home telephone. In this December 20 voicemail message, the caller identified herself as "Ms. Binman . . . calling from PR Service Processing Division." She stated that she was calling about "a potential legal matter . . . that is connected with your name and social as well as your state ID." She referred to the same case number – "case number 103105" – as had been referred to in the five prior voicemail messages. She asked Mr. Pike to call back to (404) 941-3400.

18.     The person who identified herself as "Ms. Binman" in the December 20 voicemail message is an employee of PRS or was at the time.

19.     Mr. Pike was frustrated and aggravated by PRS's conduct. He was also afraid of being sued.

20.     PRS never filed and never intended to file a lawsuit against Mr. Pike.

21.     Mr. Pike never received any letters or other mail from PRS.

22.     PRS engages in a pattern and practice of perpetrating the same conduct it perpetrated on Mr. Pike on other consumer debtors.

23.     As a result of PRS's conduct, Mr. Pike has suffered actual damages, including:

        a.      Fear of being sued;

        b.      Out of pocket expenses;

c.      Lost time; and

d.      Aggravation and frustration.

### First Claim for Relief: Violations of the FDCPA

24.     PRS's actions violate the FDCPA, including but not limited to 15 U.S.C. §§ 1692d(6),

1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692e(11), 1692f, 1692f(6) and 1692g(a)

25.     Mr. Pike is entitled to recover statutory damages, actual damages and reasonable attorney

fees and costs.

### Second Claim for Relief: Violations of the New Mexico Unfair Practices Act

26.     PRS's actions constitute unfair or deceptive trade practices within the meaning of the

New Mexico Unfair Practices Act ("UPA"), as defined by NMSA 1978 § 57-12-2(D)

generally and NMSA 1978 §§ 57-12-2(D)(14) and 57-12-2(D)(15) specifically.

27.     PRS willfully engaged in these unlawful trade practices.

28.     Mr. Pike is entitled to recover actual or statutory damages, actual or statutory damages

trebled, plus reasonable attorney fees and costs.

29.     Mr. Pike is also entitled to injunctive relief.

### Third Claim for Relief: Tortious Debt Collection

30.     PRS's actions and inactions constitute unreasonable and tortious debt collection practices

in violation of the doctrine enunciated by the New Mexico Supreme Court in

*Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

31.     Mr. Pike is entitled to recover actual and punitive damages in an amount to be determined

at trial.

### Request for Relief

Mr. Pike requests that this Court:

A.   Enjoin PRS from telephoning Mr. Pike or contacting him in any way;

B.   Enjoin PRS from threatening to file a lawsuit against any consumer debtor in New

Mexico;

C.   Enjoin PRS from attempting to collect any consumer debt in New Mexico until after it

obtains a collection agency license from FID;

D.   Award statutory and actual damages, for violations of the FDCPA;

E.   Award statutory or actual damages, trebled, for violations of UPA;

F.   Award actual and punitive damages, for tortious debt collection;

G.   Award reasonable attorney fees and costs; and

H.   Award such other relief as the Court deems just and proper.

Respectfully submitted,

TREINEN LAW OFFICE

ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)